IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| **CHRIS SIDA, ET AL.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case Number 5:21-cv-06146 |
| ) | |
| **MARK D. MURPHY, ET AL.,** ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION

**COME NOW** defendants, by and through their attorneys, and respectfully moves this Honorable Court to enter its order compelling the parties to arbitrate their disputes, and stay this matter, and for their suggestions in support thereof state as follows:

**I.     Factual Background**

On or about March 18, 2020, defendants were retained to provide general legal services for plaintiff CSM Sales and Marketing, LLC and to represent plaintiff Sida in litigation then pending in the Circuit Court of Platte County, Missouri, pursuant to the terms and conditions of an engagement letter of that date. Plaintiffs attached an annotated copy of that letter to their Complaint [Dkt. 1] as Exhibit B thereto. A clean copy of the Engagement Letter is attached hereto as ***Exhibit 1***. As plaintiffs note in their Complaint, the Engagement Letter, in its Standard Terms of Engagement, contains a provision entitled Governing Law and Arbitration. Plaintiffs admit they entered into the Engagement Letter for the retention of defendants.

In ignorance of that provision, plaintiffs have filed this action with this Court, rather than honoring the terms of their agreement to first make a best effort to settle any dispute within a period of thirty (30) days, and if the dispute cannot be settled, then the dispute is to be submitted

to arbitration before the American Arbitration Association.

**II.     Plaintiffs are Required to Arbitrate all Disputes Under the Engagement Letter**

Pursuant to the express terms of the Engagement Letter and provision entitled Governing Law and Arbitration, to proceed against defendants the plaintiffs are required to first make use their best efforts to settle any dispute and then submit the matter to arbitration if the dispute is not settled.  Rather than honor their contractual obligations, plaintiffs precipitously filed this action. Plaintiffs do not dispute that their disputes would be covered by the arbitration agreement, rather they only argue that it is invalid for somehow violating provisions of Missouri's Rules of Professional Conduct.

**A.     No Rule of Professional Conduct was Violated by the Agreement to Arbitrate**

To dispel plaintiffs offhand, unsupported postulation that the arbitration agreement is invalid and unenforceable, we look to the provisions upon which plaintiffs rely in leaping to their conclusion.   Rule 4-1.4(b) provides that "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."   Plaintiffs allege in their Complaint that the arbitration provision was not pointed out or explained to them so the provision must be invalid and unenforceable.   This fails for multiple reasons.

Defendants had a lengthy discussion with plaintiffs on March 18, 2020 regarding their legal matters, and followed that up with an email to plaintiffs attaching the Engagement Letter, a copy of which is attached hereto as ***Exhibit 2***.  As noted in the email, the provisions of the engagement letter were discussed with plaintiffs during their conversation, and the email ends with a request for plaintiffs to respond with any questions they have.  The Engagement Letter, which the Court can see is written in plain, ordinary language, ends with a request for plaintiffs to call with any question they have regarding the letter.  The page of the Engagement Letter which is titled

"Standard Terms of Engagement" begin with a bold type, all cap header that states, "**YOU ARE ENCOURAGED TO HAVE INDEPENDENT LEGAL COUNSEL REVIEW AND EXPLAIN THESE TERMS TO YOU BEFORE YOU EXECUTE THE ENGAGEMENT LETTER IF YOU HAVE ANY QUESTIONS**." The Governing Law and Arbitration provision is immediately followed by another directive – in bold 10 point capital letters as required by RSMo §435.460[1] - that states "**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES**."

So, the representation pursuant to the Engagement Letter was first discussed with plaintiffs, then plaintiffs were encouraged to get independent counsel to review the letter and explain it to them, and to cap it off plaintiffs were requested multiple times in multiple places to let defendants know if they had any questions.

<u>Plaintiffs never asked defendants any questions</u>. <u>Tellingly as well plaintiffs do not make any allegation that they don't understand the arbitration provision</u>. Plaintiffs allegations regarding the arbitration provision is simply a disingenuous attempt to avoid their contractual obligation to arbitrate.

Aside from plaintiffs' conclusory statement, there is nothing to show that defendants failed to explain any item to the extent reasonably necessary to allow plaintiffs to make an informed decision regarding the representation. In this vein, it should be noted that plaintiffs were referred to defendants by another lawyer who is a personal friend of plaintiffs. A copy of the email string in this regard is attached hereto as ***Exhibit 3***. The Court should be aware that as noted in this email string, defendants had represented a party adverse to plaintiffs in previous, unrelated

---

[1] Though the Engagement Letter provides that the laws of the state of Kansas are to apply.

litigation and prevailed over plaintiffs therein, and despite that fact plaintiffs wanted to retain defendants to represent them. Defendants are aware that plaintiffs routinely consulted with this referring attorney during the course of defendants' representation as well, but do not know if plaintiffs ever requested the referring attorney to advise them on the engagement letter, though she certainly was available so to do.

Consistent with the Comments to Rule -1.4(b), plaintiffs had extensive communications with defendants, and clearly had sufficient information to participate intelligently in decisions concerning the representation. Unless plaintiffs are contending that they are not "a comprehending and responsible adult", the information provided was more than adequate and appropriate. See Comment 5 to Rule -1.4(b).

Plaintiffs have also alleged that somehow Rule 4-1.7(b) has been violated, but to try to guess what they mean by that is shear speculation. Rule 4-1.7 deals with conflicts of interest, which does not appear to have any relevance to plaintiffs' allegations.

Lastly, the Court should note that the Missouri Bar itself provides for a dispute resolution process for clients with their attorneys which offers mediation and binding arbitration. Arbitration of attorney/client disputes is commonplace and regularly provided for in Missouri.

    **B.**    **The Agreement to Arbitrate is Mandatory**

The requirement to arbitrate is mandatory, not elective. The Arbitration Agreement provides that "all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules." This includes all claims which plaintiffs are bringing in this instant case.

Pursuant to the Standard Terms of Engagement, the Engagement Letter, and the Arbitration Agreement, are governed by Kansas law. K.S.A. 5-401, *et seq*. contains the Kansas Uniform Arbitration Act. Pursuant to K.S.A. 5- 401(b), "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract."[2]

In this case, the Agreement is clear that the parties **shall** submit their disputes to arbitration. The Arbitration Agreement specifically includes "any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, including but not limited to any alleged professional malpractice or negligence" in its coverage. The law broadly defines such terms to encompass all potential matters for arbitration. "Where the arbitration clause is broad, a presumption of arbitrability attaches and arbitration of even a collateral matter will be ordered if the claim pled implicates questions of contract construction or the parties' rights/obligations under the contract. ***Packard v. Credit Solutions of America, Inc.***, 42 Kan.App.2d 382, 440 (2009)(***citing to Cummings v. FedEx Ground Package System, Inc.***, 404 F.3d 1258, 1261 (10th Cir.2005).

By this motion, the Court should proceed summarily to order plaintiffs to submit their claims to arbitration. K.S.A. 5-429; see also RSMo § 435.355. Pursuant to the parties' agreement, the place of arbitration is to be Overland Park, Kansas.

In its recent decision in ***Morris v. Neutron Holdings***, 2021 U.S. Dist. LEXIS 68935, this Court articulated the standards to be applied here:

> Congress enacted the Federal Arbitration Act ("FAA") to overcome courts' traditional reluctance to enforce arbitration agreements. ***Allied-Bruce Terminix***

---

[2] This provision is mirrored in Missouri, RSMo §435.350.

> *Cos. v. Dobson*, 513 U.S. 265, 270, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). The FAA provides that arbitration agreements "shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Supreme Court has stated repeatedly that this provision establishes a 'liberal federal policy favoring arbitration agreements.'" *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (quoting *CompuCredit Corp. v Greenwood*, 565 U.S. 95, 132 S.Ct. 665, 669, 181 L. Ed. 2d 586 (2012)). The FAA also provides for stays of proceedings in federal district courts when an issue is referable to arbitration, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).
>
> To determine whether a particular dispute must be arbitrated, the court considers (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of the agreement. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). In construing contract language on arbitrability, any doubts are resolved in favor of arbitration. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005). The party resisting arbitration bears the burden of showing the agreement is unenforceable. *Cf. Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

*Id*. at *1-2. Just as in *Morris*, to argue that the subject agreement to arbitrate is invalid for some reason is meritless, and arbitration should be ordered and this matter stayed.

Based upon the express language of the Arbitration Agreement, the acknowledgement of plaintiffs as to the validity of the Engagement Letter, the Court should find that the parties have agreed to arbitrate all of plaintiffs' claims, order plaintiffs to arbitrate all of his claims with the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules, and stay this action.

**WHEREFORE**, defendants respectfully pray that this Honorable Court enter its order staying this case and compelling plaintiffs to submit their claims to arbitration before the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules; and for such other and further relief as to this Court seems meet and just.

**MURPHY LAW**

By _____
       **MARK D. MURPHY**, #13129
       mmurphy@mlf-llc.com
       6640 West 143rd Street, Suite 250
       Overland Park, Kansas  66223-2104
       (913) 600-7900
       Fax (913) 600-7823

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of January 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Patrick A. Hamilton
Hamilton Law Firm LLC
8700 Monrovia, Suite 310
Lenexa, Kansas  66215

Attorneys for Plaintiffs

_____
Attorney for Defendants



Mark D. Murphy<br>Email mmurphy@mlf-llc.com

March 18, 2020

**Via Email Only to chris@csmbeverages.com**

Mr. Christopher M. Sida
CSM Sales and Marketing, LLC
6410 Muirfield Street
Parkville, Missouri 64152

    Re:    Engagement Letter for Legal Representation

Dear Chris:

    This letter is to confirm the agreement for representation upon the following terms:

    You hereby employ MLF, LLC to represent you with regard to general legal services for CSM Sales and Marketing, LLC, and also with regard to your dispute with Terry Woodruff, including the litigation styled as ***Terry Woodruff v. Chris Sida***, case number 20AE-CC000786, now pending in the Circuit Court of Platte County, Missouri, and other matters as you may request and we agree upon, all which shall be pursuant to the terms of this letter and the enclosed Standard Terms of Engagement.

    My current hourly rate is $395 per hour. Our law clerks are currently billed at the rate of $150 per hour, and our legal assistants are currently billed at the rate of $110 per hour. All rates are subject to change without prior notice. We bill our clients on a monthly basis, and payment is due upon your receipt of our invoice. Unpaid invoices accrue interest at the rate of one and one-half percent (1-1/2%) per month. In order to initiate this engagement, a retainer of Five Thousand Dollars ($5,000) is required, which has been paid by credit card. At any time that the balance of the retainer is One Thousand Dollars ($1,000) or less, a charge will be made to the card you have placed on file with us to return the balance to Five Thousand Dollars ($5,000). In the event that the retainer is not fully utilized, the remaining balance shall be promptly refunded to you at the conclusion of our services.

    In addition to our professional fees, you agree to pay for all costs and other expenses as they are incurred in the matter covered by this agreement. Those expenses may include, but are not limited to, filing fees, reproduction costs, facsimiles, long distance telephone charges, postage, deposition transcripts, computerized legal research, and other such expenses. Whenever

**Freedom Bank Building**
**6640 West 143rd Street, Suite 250 ● Overland Park, Kansas 66223-2104**
**(913) 647-8090 ● Fax (913) 667-2435**
www.mlf-llc.com

Case 5:21-cv-06146-DGK   Document 11   Filed 01/07/22   Page 8 of 16

**EXHIBIT 1**

the amount of the expense can be reasonably estimated, we may request that you pay such expense in advance or provide for such payment directly with the vendor of the service or product to be obtained. In the event that we advance any expense, we will bill you monthly for such expenses, payment of which is due upon your receipt of our invoice.

You agree that we shall be in control of the legal matters, if any, as required by the Code of Professional Responsibility. You agree to fully cooperate with us. In the event that you fail to cooperate, we may, at our option, withdraw from further representation of you. In this event, you agree to promptly pay to us all unpaid fees as set forth above and any expenses advanced by us.

To acknowledge your agreement to these terms, please sign this letter below and return it to me. I look forward to working with you in this matter. Please call with any question.

Sincerely,

Mark D. Murphy

Attachment

Agreed and Accepted:

CSM Sales and Marketing, LLC

By _____
   Christopher M. Sida
   Member


_____
Christopher M. Sida, Individually

**Freedom Bank Building**
**6640 West 143rd Street, Suite 250 ● Overland Park, Kansas 66223-2104**
**(913) 647-8090 ● Fax (913) 667-2435**
www.mlf-llc.com
Case 5:21-cv-06146-DGK   Document 11   Filed 01/07/22   Page 9 of 16

# THE MURPHY LAW FIRM
# STANDARD TERMS OF ENGAGEMENT

**YOU ARE ENCOURAGED TO HAVE INDEPENDENT LEGAL COUNSEL REVIEW AND EXPLAIN THESE TERMS TO YOU BEFORE YOU EXECUTE THE ENGAGEMENT LETTER IF YOU HAVE ANY QUESTIONS**

**Fees.** Fees charged for our services are based primarily upon the time devoted to the matter, including travel away from the office and other services rendered on your behalf.

**Hourly Rates.** The rates actually charged to you will be those in effect at the time services are rendered. The rates for each person working on your account will be shown every month in a summary at the end of your billing statement. By signing the fee agreement, you acknowledge that the hourly fees charged to you may increase at any time without notice and agree to pay the hourly rate in effect at the time services are rendered.

**Fee Estimates.** While we may be able to give an estimate of the range of fees and costs you can expect to incur, based on certain assumptions, an estimate of our total fees is not possible because of the uncertainties involved, the novelty or difficulty of the legal issues, the time required to ascertain the relevant facts and obtain the required information and documents from other parties, time limitations imposed by you and others and the continuing nature of the matter. As the work progresses, much of what we do will depend upon the responses of other parties or agencies.

**Monthly Statements and Timely Payment.** Statements for services rendered and costs incurred will be prepared and sent to you on a monthly statement and costs will be identified. Please contact us if you have any questions about the nature and extent of the services rendered or the costs incurred.

**Interest on Overdue Accounts.** Interest at the annual rate of 18% will be charged on unpaid accounts that are more than 30 days past due, with interest accruing from the date of the billing statement. Invoices are payable upon receipt.

**Delegation of Work.** There may be more than one attorney or paralegal who works on your matter. We make every effort to delegate work to the person, whether a partner, associate or paralegal, whom we believe is best able to accomplish the particular task efficiently and effectively.

**Payment of Costs.** In addition to our fees, you will be responsible for payment of all costs incurred on your behalf, including without limitations filing fees, compensation paid to third parties (such as consultants, expert witnesses and accountants), travel expenses, postage, messenger and other fees, telephone charges, photocopying charges and other costs incurred by us on your behalf. We may ask you to either pay costs directly or pay them in advance.

**Client Trust Funds.** All advance retainer payments are deposited by us in a client trust account maintained on your behalf. Our current or otherwise earned fees and any accrued and unpaid costs will be deducted automatically from your trust account balance, unless the retainer is a non-refundable retainer for the commitment of our time and services, in which event the full amount of the retainer is fully earned at the time it is paid (and we will reserve our time and services in accordance with our agreement so to do), and it will be removed from our client trust account. Should there be substantially more or less activity than expected, the agreed level of the retainer may be adjusted accordingly. You may be required to maintain a trust account balance to insure payment of your account on a timely basis. The amount of the trust account requirement does not constitute an estimate or limitation on the total fees and costs to be incurred. We reserve the right to withdraw from representation or decline representation in any new matters if we determine the increased level of services requires an increase in the retainer level, and the increased amount is not paid by you as requested.

**Proceeds and Authorization to Endorse.** So long as there are fees and/or expenses owed us, you hereby authorize and direct us to endorse any checks, drafts or other such instruments on your behalf for deposit in our account and apply such proceeds to fees and/or expenses owed, and grant us your power of attorney so to do. In the event that there are proceeds remaining after such application, such proceeds shall be promptly forwarded to you.

**Lien Rights.** We will have a lien for the payment of fees and costs incurred under this fee agreement against any settlement, compromise or judgment which may be obtained on your behalf. This lien will apply as to all matters in which we represent you without regard to which particular matter in which the fees and costs were incurred.

**File Retention and Destruction**. For Missouri representation only, we will maintain your file for a period of six (6) years after your legal matter is concluded. You may request your file at any time during, upon conclusion of, or after conclusion of, that matter. Six (6) years after the conclusion of that matter, your file may be securely destroyed without further notice to you. For all other representation, we will maintain your file for a period of five (5) years after your legal matter is concluded. You may request your file at any time during, upon conclusion of, or after conclusion of, that matter. Five (5) years after the conclusion of that matter, your file may be securely destroyed without further notice to you. We also may contact you upon the conclusion of your matter to either provide your file to you or securely destroy it at that time.

**Termination of Representation.** In the event that our representation of you is terminated for any reason, by either you or us, you shall pay to us at that time all fees and expenses accrued and owing. In the event that you fail to pay such fees and expenses, you shall be liable for all costs of collection, including attorney fees, which we may incur to collect those fees and expenses. To the extent allowed by law, you agree to waive any right to obtain your file and any other property of yours held by us on your behalf until such time as you make full payment of all fees and expenses accrued and owing. To the extent allowed by law, in the event that you make such payment and request your file and such property, you agree to pay all reasonable costs for us to copy the file for our records which we may incur. Normally, we provide you with a copy of all correspondence, legal filings and all other documents which we prepare or receive and to the extent thereof, you agree that you are not entitled to obtain the copies of which we hold in our files. Only upon payment of those costs will your files and other property be released to you. In no event shall your files be considered to include any attorney notes or memoranda, which shall be retained by us.

**Governing Law and Arbitration**. All questions with respect to the construction or interpretation of the terms and conditions of the engagement of MLF, LLC shall be determined in accordance with the applicable provisions of the laws of the state of Kansas. In the event of any dispute, claim, question, or disagreement arising from or relating to this agreement or the breach thereof, including but not limited to any alleged professional malpractice or negligence, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. If they do not reach such solution within a period of thirty (30) days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The place of arbitration shall be Overland Park, Kansas. Each party shall be responsible for its own costs and expenses incurred with regard to any such arbitration, including but not limited to travel expenses, out-of-pocket expenses such as copying and telephone, witness fees and attorneys' fees, and that the parties shall equally share in the costs and expenses of the arbitration proceeding, including but not limited to administrative fees, arbitrators' fees, and facility fees, if any, for where the arbitration is held; provided, however, that the prevailing party shall be entitled to recover its attorney fees and expenses incurred therein.

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES**.

Revised October 2019



**Freedom Bank Building**
6640 West 143rd Street, Suite 250 • Overland Park, Kansas 66223-2104
(913) 647-8090 • Fax (913) 667-2435
www.mlf-llc.com

# Credit Card Authorization

In an effort to better serve our clients and simplify your billing experience, our firm credit card payments. Credit Card information is filed with your confidential client information and kept secure.

**Payment Options**

_____ (initial) I hereby authorize MLF, LLC to charge the balance currently due on my account for the amount of $  5,000.00 retainer  .

_____ (initial) I hereby authorize MLF, LLC to charge the balance of my account automatically each month. Account will be charged on the date that the invoice is issued.  Per Engagement Letter

_____ (initial) I choose to pay a portion of my account balance in the amount of $_____. Balances for legal services are due upon receipt of an invoice. Thirty (30) days after the date of the invoice, balances are considered past due and will accrue interest at the contract rate of 18%.

**Bank Account Information**

**Client Name:**  Chris M. Sida

**Billing Address:**  6410 Muirfield Street

 Parkville, Missouri 64152

**Type of Account:**  [X] VISA/Mastercard   [ ] American Express

**Name on Card:**  Chris M. Sida
**Account Number:**  __   9334
**Expiration Date:**
**CIV Number:**
(3 digits for VISA/Mastercard, 4 digits for American Express)

**Billing Zip Code:**  64152

**Authority to Debit**

Being the account holder or the authorized agent of the account holder, by signing above I understand and agree to the terms set forth in this agreement, agree to pay, and specifically authorize to debit the listed bank account for the services provided. I further agree that in the event this bank account becomes invalid, I will provide a new valid bank account upon request, to be charged for the payment of any outstanding balances owed. I furthermore confirm that I have received all services to satisfactory conditions. This authority shall remain in full force and effect until MLF, LLC has actually received written notice from me of its termination in such time and manner as to fully afford MLF, LLC a reasonable opportunity to act upon it.

**Signature of Account Holder:** _____  **Date:** _____

| | |
|---|---|
| Subject: | MLF Engagement Letter |
| Date: | Wednesday, March 18, 2020 at 11:48:43 AM Central Daylight Time |
| From: | Mark Murphy |
| To: | Chris Sida |
| CC: | Kelsey Cohen |
| Attachments: | image001.png, Murphy Law Engagement Letter - Sida.pdf |

Chris:

Good speaking with you this morning. As we discussed, I have set up a DropBox folder for you to upload all of the relevant documents and information. I will reach out today to the attorney for Mr. Woodruff and let him know that I will accept service of the petition to stop it from being served on you personally. When we get the documents and information from you, we will go through it all and get back with you with questions and proposed strategies to defend that case.

I will also go in and change your registered office and business address with the Missouri Secretary of State as we discussed, and will send you the filed document accomplishing that taks.

Lastly, I have attached my standard form engagement letter which we discussed. Please sign it as shown and return it to me. Also attached is a written credit card authorization – please sign it where shown as the account holder, and also initial both the top line which reflects the $5,000 retainer paid, and the second line at the top which reflects the monthly charge which will be made for the account balance to maintain the retainer balance.

Please let me know what questions you have.

Mark

**Mark D. Murphy**
Managing Member
MLF, LLC
Freedom Bank Building
6640 West 143rd Street, Suite 250
Overland Park, Kansas 66223-2104
913-647-8090
Fax 913-667-2435
mmurphy@mlf-llc.com
http://www.mlf-llc.com



Missouri & Kansas Super Lawyer

The ultimate measure of a man is not where he stands in moments of comfort and convenience, but where he stands at times of challenge and controversy. – Martin Luther King Jr.

**CONFIDENTIALITY NOTICE:**
This e-mail message and any attachments are confidential, and may contain information that is privileged, attorney-client communication or work product. If you have received this communication in error, please immediately notify the sender at 913-647-8090 or by reply e-mail, and delete this e-mail message and any attachment(s) from your system.

**Subject:** RE: Woodruff v. Sida
**Date:** Tuesday, March 17, 2020 at 1:17:33 PM Central Daylight Time
**From:** Phyllis Norman
**To:** Mark Murphy
**CC:** Kelsey Cohen

Yes I think his financial situation is fine. I told him he would need to give you a $5,000 retainer most likely just to start.

I talked to him he just wants someone like me that does business stuff. I told him you will shoot him straight on whether he needs to fight or not and you will get feisty when needed. He has some legitimate arguments on countering what is fully owed.

Thanks,

Phyllis

---

**From:** Mark Murphy <mmurphy@mlf-llc.com>
**Sent:** Tuesday, March 17, 2020 12:14 PM
**To:** Phyllis Norman <phyllis@ngkclaw.com>
**Cc:** Kelsey Cohen <kcohen@mlf-llc.com>
**Subject:** Re: Woodruff v. Sida

Has he paid anything at all on the debt? Any reason why he hasn't paid aside from lack of funds?

He is really interested in me helping him despite the earlier case I handled against him?

What is his financial position now, if you know. Based upon my previous experience and seeing this, does he have the ability to pay the legal fees that will be incurred?

Thanks Phyllis!

Mark

Hope you and your family are weathering this coronavirus well. Without tennis I think I would go crazy.


**Mark D. Murphy**
913-647-8090
mmurphy@mlf-llc.com

**CONFIDENTIALITY NOTICE:**
This e-mail message and any attachments are confidential, and may contain information that is privileged, attorney-client communication or work product. If you have received this communication in error, please immediately notify the sender at 913-647-8090 or by reply e-mail, and delete this e-mail message and any attachment(s) from your system.

---

**From:** Phyllis Norman <phyllis@ngkclaw.com>

**EXHIBIT 3**

**Date:** Tuesday, March 17, 2020 at 11:23 AM
**To:** Mark Murphy <mmurphy@mlf-llc.com>
**Subject:** FW: Woodruff v. Sida

From the attorney stating they filed. Chris said we can accept service. I told him about you and he would like to meet. There is another contract at breach as well to counter etc. He needs someone to be strong against other attorney and also be strong to him if he needs to just settle.

Phyllis

---

**From:** Scott C. Grier <sgrier@rousepc.com>
**Sent:** Monday, March 16, 2020 5:55 PM
**To:** Phyllis Norman <phyllis@ngkclaw.com>
**Cc:** John Witten <jwitten@rousepc.com>
**Subject:** RE: Woodruff v. Sida

Phyllis,

Thank you for the response. I will hold off on serving Mr. Sida for a couple of days until I hear from you. Again, my client has pushed us to move forward, which resulted in us filing the lawsuit. Also, I will discuss with my client the sending of text messages to Mr. Sida.

Thank you,

Scott Grier

---

**From:** Phyllis Norman <phyllis@ngkclaw.com>
**Sent:** Monday, March 16, 2020 3:00 PM
**To:** Scott C. Grier <sgrier@rousepc.com>
**Cc:** John Witten <jwitten@rousepc.com>
**Subject:** Re: Woodruff v. Sida

I will ask my client. At this point, I cannot agree. A warning would have been nice under the circumstances.

I have not been able to meet with him to get a response for several reasons including social distancing issues/school closings etc. I was going to ask for 30 days time but since you filed we can all just do litigation if your client wants but that is much more expensive. Up to your client on if he wants to give us time to respond and negotiate this. Let me know.

Also it is my understanding your client is sending text messages to my client that are aggressive please ask him to stop contact since he has filed suit and hired an attorney.

Thanks

Phyllis Norman

> On Mar 16, 2020, at 2:50 PM, Scott C. Grier <sgrier@rousepc.com> wrote:

Phyllis,

I wanted to provide you an update. Since we did not receive a response from you, my client was anxious to get this case moving. Accordingly, we will filed a petition today. Can you accept service? If not, please let me know and we will have Mr. Sida served.

Thank you,

Scott Gire

**From:** Phyllis Norman <phyllis@ngkclaw.com>
**Sent:** Thursday, February 27, 2020 11:47 AM
**To:** Scott C. Grier <sgrier@rousepc.com>
**Subject:** Woodruff v. Sida

Scott – Good speaking with you. Thanks for the extension to March 10th. I will gather up all the stuff Chris had mentioned to me and get it over to you as well then we can see what is happening.

I appreciate this since I just got involved.

Thanks,

**Please note our new address as of April 25, 2019**

**Phyllis Norman**
**NORMAN AND GRAVES, LLC**
4505 Madison, Suite 220
Kansas City, MO 64111
816-895-8985 – direct
816-895-8988 – fax
phyllis@ngkclaw.com

<image001.jpg>

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by reply e-mail, by forwarding this to phyllis@ngkclaw.com or by telephone at 816-895-8985 and destroy the original transmission and its attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.